1  JOANNA SHERIDAN (CABN 260090)
   J.P. Sheridan Law
2  601 Montgomery Street, Suite 850
   San Francisco, CA 94111
3  Telephone:  (415) 347-2700
   Facsimile:   (415) 347-2701
4  Email:         joanna@jpsheridanlaw.com

5

6  Counsel for Defendant, GEORGE WASHINGTON

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO  DIVISION

11

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      v.<br><br><br>GEORGE WASHINGTON<br><br>            Defendant. | Case No.: 24-CR-0026 WHA<br><br>SENTENCING MEMORANDUM OF DEFENDANT WASHINGTON<br><br><br>Honorable Senior District Judge<br>William H. Alsup<br><br>Date: November 12, 2024<br>Time: 9:00 am |

**I.    Introduction**

George Washington is a devoted father, a generous mentor, and respected member of a union construction crew. He is also a victim of gun violence with family ties to the Sunnydale Housing Development in San Francisco. Mr. Washington has made his share of mistakes, including a prior armed robbery that landed him in state prison. Over the past three years, however, he has worked hard and achieved stable employment, union membership and growth mindset dedicated to building a brighter future for himself and his children.

Mr. Washington is deeply remorseful for his conduct in this case. He knows that his decision to unlawfully possess a firearm has harmed both his life and the lives of his children who look to him

for protection and guidance. For this, he feels ashamed. Mr. Washington has taken responsibility for his actions by pleading guilty to Count Two of the Indictment charging him with Felon in Possession of Firearm, 18 U.S.C. § 922(g)(1). In light of his conduct in this case, his role as provider for his daughter and step-son, his two-year employment record and the job that is waiting for him upon his release, Mr. Washington respectfully recommends that the Court impose a term of one year and one day in custody followed by three years of supervised release.

II.     **Statement of Facts**

    a.   **Facts Underlying Conviction**

On November 8, 2023 a search warrant was executed at a residence on Sunnydale Avenue in San Francisco. The warrant sought evidence of a shooting incident that occurred on July 4, 2023. PSR ¶ 11. Two firearms were located during the search, though neither was linked to the shooting under investigation. See, PSR ¶¶ 12, 13. On information and belief, multiple other locations associated with alternate suspects were also searched on November 8, 2023. The outcome of those alternate searches is unknown to the defense.

Mr. Washinton has a familial association with the Sunnydale Avenue residence that was searched. His paternal grandmother lived in this home during his childhood and now his great aunt lives there. Since July of 2022, Mr. Washington often stayed the night at the Sunnydale residence because he was working full time on a construction crew in San Francisco. Construction work starts early and his mother lives in San Bruno, so it made sense to sleep on the couch in San Francsico and avoid expensive commutes.

The firearm linked by DNA evidence to Mr. Washington was located in a bin of clothes in an upstairs bedroom. See, PSR ¶ 13. It was not found on his person or in his backpack, which lay on the ground near the couch where he had been sleeping. Mr. Washington admitted possessing the firearm and knowing he was prohibited from doing so because of his prior felony conviction. PSR ¶ 14.

    b.   **George Washington's history and characteristics**

        i.   **A family-oriented father**

Mr. Washington's devotion to family has been a consistent theme in his life. Growing up, he would help his mother to take care of his two younger brothers even when doing so was

"overwhelming" in light of his own homework and commitment to the football team. PSR ¶ 56. He has a tattoo on his arm that reads "Family First". PSR ¶ 61. He became a father figure to his partner's seven-year-old autistic son when the boy was only two years old and maintains daily communication with his "step-son". PSR ¶ 58. Mr. Washington and his partner now have a two-year old daughter together. *Id*. Mr. Washington enjoyed spending time with his children and looks forward to his release when he can "focus on being a present and active father to his children." PSR ¶ 60.

Mr. Washington has written a letter for the Court expressing how "hurt" he is knowing that he is not able to be close to his two kids who look to him for protection and guidance. *See Exhibit A, Letter from George Washington*. He also says that he has worked hard at his union job so that he could be a good example for his kids. He commits to continuing to work hard and support his kids when he is released. *Id*.

Mr. Washington grew up with very little contact with his own father. PSR ¶54. His mother believes that the absence of his father left George with "a void of unanswered questions in his life." *See Exhibit B, Letter from Sharonda B. Smith*. As a result, "George was a kid who loved to make people smile and pleasing their likings while neglecting his own feelings." *Id*. Mr. Washington's cousin describes him as always having been "family oriented," and now that he is a father "he especially loves the quality time spent with his daughter. George becoming a father has had a positive impact on his life. He has shared with me how he wants to be there for his baby girl." *See Exhibit C, Letter from Dematra Ellison*.

Similarly, Mr. Washington's aunt describes him as "a respectful family member who shows his love by helping his love ones even before they ask." *See Exhibit D, Letter from Mrs. Delores Beasley-Ellison.* Ms. Beasley-Ellison further describes Mr. Washington's relationship to his family:

> if you are sick, he is there to help you by bringing you a meal to eat. If you need a ride to an appointment he is there. He would ask to see if here is something you need him to do. If you need your yard cleaned, he will help without complaining even in the sun. He would bath, and walk your dog. He does this and much more for his family. As trouble has no name I know our family needs to do more to help him as he has helped us. As we all have failed him when he has asked for our help. I know that he is not a perfect person and that he has his flaws, but so do we all. I understand he has had other convictions, but, at 33 he was starting to get his life back on track. He does have his beautiful daughter who he spends most of his time with when he is not working. *Id.*

Mr. Washington's partner Delacey Collins describes him as "sweet, loving, caring and generous to everyone around him." She writes that "George is not a bad person. George is not a mean person. George is a loving father, friend, son, cousin and [he] Will give you the last of his anything if you needed it. The purpose of my letter is to show how much of an asset he is to his community, his family and his employment." *See Exhibit E, Email from Delacey Collins.*

### ii. A mentor to at-risk youth

Mr. Washington has long engaged with his community as a mentor to encourage the positive development of at-risk youth. As a teenager, he volunteered at the YMCA to help kids with their homework and to chaperone fieldtrips. *See Exhibit B*. Mr. Washington also volunteered for the Junior Olympics in Pacifica. *See Exhibit F, Letter from Claudia Valle*. Ms. Valle remembers that "George donated his time to help train kids and get them prepared to compete in the intercollegiate games. He would cheer and mentor our students along with other parents and volunteers." *Id*. Since 2007, Ms. Valle has stayed in close contact with Mr. Washington's family, and "George has become a big brother to my kids and a person that can count on and always willing to lend a hand, an ear and a smile."

More recently, Mr. Washington has taken several young men under his wing to provide motivation and support. *See Exhibit G, Letter from Syesha La Cour.* Ms. La Court describes Mr. Washington as "a positive role model for my son and other young men in the neighborhood" who "attends my son football games, giving him support and guidance so he does not make the same mistakes Mr. Washington did growing up." *Id.* Ms. La Cour further observes:

> I've seen a tremendous change in him since his previous 5-year sentence. Mr. Washington has devoted himself to God and walking in the faith of the Lord. I have the pleasure of saying he is committed to working hard, building a better life for his two-year-old daughter. His bond with his daughter is unbreakable…. His daughter needs her father's guidance and honestly, I would hate for the bond he has with my son to be broken. He has been an intricate part of my son's growth into manhood. *Id*.

Similarly, Ms. Ellison describes her cousin's new joy at making a positive contribution to his neighborhood:

> Since his release from prison, I have seen him George seek and maintain employment in the construction field. It seems that George really enjoys the work he does. I believe the enjoyment comes from him being able to help rebuild the neighborhood, but not just any neighborhood; the

> neighborhood he witnessed destroy the lives of many of his peers. The George I know gives back, I have seen him encouraging change and positivity to his peers and the younger generation.

*See Exhibit C.*

Mr. Washington's plans for the future include starting his own business to work with at risk youth. PSR ¶ 60. He has been involved in creating an LLC to perform outreach to disadvantaged youth, to "help steer future kids from going down the path I went and repeating my same mistakes." *See Exhibit A.*

### iii. A victim of gun violence

Mr. Washington sustained serious gunshot wounds when he was 16 years old. He was a victim of a "robbery gone wrong," as he described it, and was hospitalized for three weeks as he underwent several surgeries to repair his knee and leg. Months of physical therapy followed. PSR ¶ 57. During this time, he relied on his older cousin for physical and emotional support. Tragically, just weeks after Mr. Washington was released from the hospital his cousin was shot and killed. *Id*. Shortly thereafter, his great-grandmother died of cancer. Although Mr. Washington continued to engage with his community as a volunteer and finished high school, these traumas cut deep. He focused on "just going through the motions" and did not process his feelings. *Id*.

Although he wanted to avoid these horrible feelings of loss, Mr. Washington wasn't able to escape the long-term effects of the gunshot trauma. He experienced panic attacks and increased anxiety after he was shot. PSR ¶ 63. He attended therapy for victims of trauma, but didn't feel comfortable opening up to the counselor. *Id.* With the passage of time and his new role as a mentor to others, Mr. Washington sees how important it is for him to address his own underlying traumas. He is interested in engaging in therapy while on supervised release. *Id*.

### iv. A man who learned from his time in prison

When Mr. Washington reviewed his criminal record in the PSR, with two adult felony convictions, three adult misdemeanor convictions and three juvenile adjudications, his reaction was that he cannot recognize the person he used to be. In his letter to the Court writes: "I have made so many strides to erase that person who made those mistakes. My criminal record does not define who I am today. I figured out in prison that the criminal lifestyle wasn't for me anymore." *Exhibit A*. Mr.

Washington's mindset has shifted in an important way. "The difference in my thinking from now and then is the fact I have responsibilities and people who depend on me now. My previous mindset was a selfish mindset, but now seeing how it got me nowhere I had to make a decision." *Id.* He decided to make positive choices for himself and to work hard at his union job. *Id.*

Mr. Washington all too painfully recognizes the mistake he made by possessing a firearm in this case. While he acknowledges the influence of "old friends who easily help me slide back into old behaviors" Mr. Washington takes responsibility for his own "lapse of judgment" that is to blame here. He writes to the Court: "I know I made another mistake in this case, but I am on a better path in my life and I will continue to go down this good path. I know I can do better. And I will do better." *See Exhibit A*.

### v. A valued asset on his union construction crew

After serving his prison term and being discharged from parole, Mr. Washington decided to buckle down and get a union job. He wanted to provide for his family and be a good example for his kids. *See Exhibit A*. From July 2022 until he was remanded to custody in September of 2024, Mr. Washington worked on construction crews with the Local 261 Laborer's Union. PSR ¶ 68. His latest employer was Osmun Construction where he worked under the supervision of Superintendent Tom Turner. Mr. Turner supports Mr. Washington's return to work at Osmun Construction upon his release, writing in support that:

> George worked hard every day to improve at his job and quickly became part of the team. He was punctual and always arrived at work with a positive attitude. Through hard work and determination, George earned the respect of the crew. George was working hard to change his life path. I believe, because I witnessed his actions, George wants to improve himself. It would be a shame to have that cut short. George is a good, hard-working man and he deserves to return to Osmun Construction to continue his positive progress forward.

*See Exhibit H, Email from Tom Turner*.

Mr. Washington has completed classes in connection with his union work, including OSHA, first aid, CPR and working in confined spaces. PSR ¶ 67. He has started classes for forklift and heavy machinery operations, and intends to return to the union to complete these and other educational opportunities when he is released from his incarceration in this case.

**III.    Points and Authorities in Support of Recommended Sentence**

      **a.   General Principles Governing Sentencing**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States,* 562 U.S. 476, 487 (2011) (citation omitted). This tradition is based on the principle that the punishment must fit the offender, not just the crime. *Id*. In *United States v. Booker,* 543 U.S. 220, 245 (2005), the Supreme Court granted wide latitude to sentencing judges by transforming the United States Sentencing Guidelines from mandatory to advisory. "In the wake of *Booker*, federal sentencing is now governed by 18 U.S.C. § 3553(a)." *United States v. Menyweather*, 431 F.3d 692, 695 (9th Cir. 2005). In accordance with this longstanding tradition of crafting punishment to fit both the crime and the offender's unique circumstances, the Court must impose a sentence consistent with the purposes set forth with the 18 U.S.C. §3553(a).

The primary directive in § 3553(a) is that the Court fashion a sentence that is "sufficient, but not greater than necessary" in order to comply with the purposes of punishment set forth therein. Those purposes are (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2). In determining whether a sentence is "sufficient, but not greater than necessary" to accomplish these purposes, courts must consider certain factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant," §3553(a)(1); the guidelines sentencing range and any applicable Sentencing Commission policy statements, §3553(a)(4) and (5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," §3553(a)(6).

Accordingly, Mr. Washington addresses the following section 3553(a) factors for the Court's consideration in its determination of the appropriate sentence in his case.

### b. 3553(a)(1) - History and Characteristics of George Washington

George Washington is a father, son, brother, cousin and nephew who often puts the needs of others before his own. He has worked throughout his life to better his community, most recently as a mentor and a union construction worker. Instead of following in the path of his own father, George Washington is an actively involved dad who strives to spend as much time as possible with his kids. Although he was born into an extended family with longstanding ties to high crime areas, George has pushed hard to chart at different path for himself. He is not infallible, but he works very hard to bring about positive changes in his own life and the lives of others. He is on the right path now and his actions over the past two years show that he will not deviate from this path again.

### c. 3553(a)(2) – The Need for the Sentence Imposed

Section 3553(a)(2) directs the Court, in determining the particular sentence to be imposed, to consider the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Here, Mr. Washington possessed a firearm as a felon. The firearm was uncovered inside his relative's residence during an investigation into a shooting. Although Mr. Washington was never linked to that shooting, he acknowledges that his unlawful possession of a loaded firearm is serious. As a victim of gun violence himself, who also lost his beloved cousin to gun violence, the terrible dangers of gun violence are readily apparent to Mr. Washington.

Mr. Washington's decision to possess a firearm, despite knowing he was legally prohibited from doing so, reflects a degree of disrespect for the law. However, a greater measure of his appreciation for the law is his more than two-year period of sustained employment through the laborer's union. Working as a laborer on a construction crew is not easy; it is often back-breaking work in the hot sun. Mr. Washington entered this workforce with humility and respect. Over a sustained period of time, he earned the appreciation of his union construction crew. By these actions, Mr. Washington has demonstrated that he values and is dedicated to leading a law-abiding life.

    Mr. Washington clearly regrets his mistake of possessing a firearm. When considering how much time in custody is will achieve the goals of general and specific deterrence, the Court should consider that Mr. Washington's positive life trajectory is on hold while he serves his time. Every day that he is separated from his daughter feels like an eternity. This is Mr. Washington's first federal case and he didn't appreciate how significant the consequences would be in federal court. PSR ¶ 17. Given his age, his new role as a father and the stable job that is waiting for him when he is released, it is extremely unlikely that Mr. Washington will re-offend.

    Probation recommends an 18-month sentence, the high end of the guidelines, pointing to Mr. Washington's concerning proclivity to possess weapons, traumatic events as a youth, and his recent progress including sustained employment. See, Sentencing Recommendation, p. 2. While it is true that Mr. Washington's juvenile and early adult years were marked by gun possession and an armed robbery, the Court should focus the lens of its section 3553 inquiry on Mr. Washington as he appears before the Court today, at age 33. The man who will stand before the Court at sentencing is not the teenager who possessed firearms at school, or the young adult who robbed a shop keeper at gunpoint. The George Washington of today is a father, dedicated to his work and his family. He is man whose commitment to developing vocational skills and maintaining employment can be seen in his actions. George Washington does not pose a danger to the public. He is a man who has been humbled by his experience in federal court and will utilize the services available on supervised release to better himself so he can mentor the youth in his community. Given these unique factors, a sentence of one year and one day is sufficient but not greater than necessary to meet the goals of federal sentencing.

## CONCLUSION

    For the reasons set forth above, Mr. Washington respectfully moves the Court to impose a sentence of one year and one day. This sentence both sufficient and not greater than necessary to meet the goals of sentencing in light of the positive changes he has made in his life.

Dated: November 5, 2024                      Respectfully submitted,

                                                      /S/ Joanna Sheridan____
                                                      JOANNA SHERIDAN
                                                      Counsel for Defendant George Washington